IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATIONAL UNION OF HOSPITAL AND
HEALTH CARE EMPLOYEES DISTRICT
#1199 NEW MEXICO, AFL-CIO, CLC,

      Plaintiff,                                                No. CIV 05-1002 MV/LFG

vs.

TAOS HEALTH SYSTEMS, INC., a
domestic non-profit corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Attorneys Fees, filed June 21, 2006, **[Doc. No. 24].** The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be granted.

## BACKGROUND

Over Memorial Day weekend of 2004, Mary Conant, a nurse in the labor and delivery unit of Holy Cross Hospital ("Hospital"), was assigned to monitor a fetus that subsequently died during childbirth. The Hospital alleged that the fetal demise was a result of patient care failures by Conant and requested that Conant transfer to the medical surgical unit. When Conant refused to transfer from labor and delivery, she was terminated.

The National Union of Hospital and Health Care Employees, District #1199NM, AFL-CIO, CLC ("Union") grieved Conant's termination and, when the dispute was not resolved through the grievance procedure, the parties submitted the matter to a duly selected arbitrator. After holding a hearing, the arbitrator concluded that the Hospital did not have just cause under

the CBA to discipline Conant because the Hospital's investigation of the fetal demise incident, which the arbitrator characterized as a "kangaroo court" and a "hanging," was inadequate and unfair and did not afford Conant due process. As a remedy, the arbitrator ordered that Conant "be reinstated to her former job in Labor and Delivery at the appropriate rate of pay and seniority under the Agreement."

Following issuance of the arbitrator's award, the Hospital attempted to simultaneously reinstate Conant to labor and delivery and transfer her to another unit, citing concerns about patient care and Hospital liability if she were to be involved in another fetal demise incident. The Union subsequently filed this action to enforce the arbitration award contending that the Hospital, by seeking to immediately transfer Conant from labor and delivery based on the same facts the arbitrator considered when ordering her reinstated, did not reinstate Conant as required by the arbitration award. The Hospital contended that it complied with the arbitration order by reinstating Conant to labor and delivery and that the simultaneous transfer of Conant was a subsequent employment decision that had to be submitted to a separate grievance and arbitration process.

On June 9, 2006, the Court issued an Opinion finding that the question of whether Conant should be transferred due to the fetal demise incident, which was raised in the arbitration by the Hospital, was intertwined with the question of whether she could continue her employment in the labor and delivery unit and was necessarily considered by the arbitrator when he ordered reinstatement to the labor and delivery unit such that no further exhaustion of contract remedies was required. The Court found that the Hospital's proposal to reinstate Conant to labor and delivery and then immediately transfer her to another unit based on the same facts that the

arbitrator considered when ordering her reinstated to labor and delivery was an improper attempt to nullify the arbitrator's award.

Plaintiff now seeks an award of attorneys fees on the grounds that the Hospital's refusal to comply with the reinstatement order was "obstinate or designed to delay the inevitable compliance required." *See Dreis & Krump Mfg. Co. v. Machinists Dist. 8*, 802 F.2d 247, 253 (7th Cir. 1986) (awarding attorney's fees in arbitration award enforcement action and noting that a party "will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals.")

Courts have the inherent power to assess attorneys' fees when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *F. D. Rich Co.*, 417 U.S.116, 129 (1974). "The bad faith exception is drawn very narrowly and may be resorted to only in exceptional cases and for dominating reasons of justice." *United States v. McCall*, 235 F.3d 1211, 1216 (10th Cir. 2000) (quotation omitted).

The Hospital's position in this litigation was without merit. While there are a few cases holding that a simultaneous reinstatement and transfer to another position based on independent business reasons does not violate an arbitration award requiring reinstatement to a particular position, the Hospital did not cite, and the Court did not locate, a single case in which a court upheld a decision to simultaneously transfer an employee based on the *same* factors considered by an arbitrator in ordering reinstatement. It is apparent from the record that the Hospital was determined not to reinstate Conant to labor and delivery as required by the arbitration award. The Hospital's maneuvers to avoid reinstating Conant in accordance with the arbitration award deprived Conant of the primary benefit gained by submitting to arbitration--avoiding the expense

and delay of court proceedings.  *See Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986).  The Hospital's improper attempt to avoid the arbitration award qualifies as acting "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *F. D. Rich Co.*, 417 U.S. at 129.  Consequently, the Court will award attorney's fees to Plaintiff for the litigation to enforce the award.

To make the initial determination of what amount is a reasonable fee, a court should take "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The product of this multiplication is called the lodestar.  The lodestar provides an "objective basis on which to make an initial estimate of the value of a lawyer's services."  *Id.*   The fee applicant bears the burden of demonstrating that the number of hours and the hourly rate are reasonable.  *Id*.

The Hospital does not challenge either the number of hours expended or the hourly rates requested by Plaintiff's attorneys. The Court, however, finds that the requested hourly rates are not properly supported.

The first step in setting a rate of compensation is to determine the prevailing market rate in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson,* 465 U.S. 866, 895 & n. 11 (1984); *see also Beard v. Teska*, 31 F.3d 942, 956-97 (10th Cir. 1994).  A court must not determine a "just" or "fair" price, but rather determine what the attorney would receive if he were billing a paying client rather than being paid by court order.        In support of its request for attorney's fees, Plaintiff has submitted an affidavit from its counsel, Shane C. Youtz.  In this affidavit, Mr. Youtz requests his top hourly rate of $225 for his work on this case due to its "complexity."   This case was not legally or

4

factually complex.  Mr. Youtz's hourly rate, therefore, will be reduced to $175--the rate he identified in his affidavit as the average hourly rate he receives for work performed on behalf of his union clients.

Mr. Youtz also requests that his associate, Stephen Curtice, be compensated at the rate of $225 per hour.  Mr. Youtz's affidavit, however, does not provide the necessary information regarding Mr. Curtice's legal skills, experience, reputation or the hourly rate he receives from paying clients for the Court to determine if this rate is justified.  Based on the fact that Mr. Youtz, who appears to be the senior attorney on this case, is being compensated at the rate of $175 per hour, the Court will reduce Mr. Curtice's hourly rate to $150.

With these reductions in hourly rates, the total fee award to Plaintiff shall be $9,125.00.  The Court will exercise its discretion to award New Mexico gross receipts tax at a rate of 6.75% on Plaintiff's reasonable attorney's fees, which increases the total award by $615.94.[1]  *See* NMSA 1978 § 7-9-1; *Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir. 1986) (approving award of gross receipts tax).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorneys Fees, filed June 21, 2006, **[Doc. No. 24]** is **GRANTED**.  Plaintiff is hereby awarded attorney's fees in the amount of $9,740.94.

Dated this 14th day of March, 2007.

---

[1] While the invoices submitted by Plaintiff contain cost information, Plaintiff's motion does not seek costs and no costs will be awarded.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
   Shane C. Youtz, Esq.
   Stephen Curtice, Esq.

Attorney for Defendant:
   Michele Masiowski, Esq.
   Dianne Garrity, Esq.